```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA

BRIDGET DREW,                    )
                                 )
              Plaintiff,         )
                                 )
v.                               )    Case No. CIV-16-035-RAW-KEW
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social           )
Security Administration,         )
                                 )
              Defendant.         )
```

## REPORT AND RECOMMENDATION

Plaintiff Bridget Drew (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 20, 1984 and was 30 years old at the time of the ALJ's latest decision. Claimant completed his education through the eleventh grade. Claimant has no past relevant work. Claimant alleges an inability to work beginning November 20, 1999 due to limitations resulting from bipolar disorder, irritable bowel syndrome, sleep disorder, headaches, and

dyslexia.

**Procedural History**

On September 10, 2010, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, an Administrative Law Judge ("ALJ") entered an unfavorable decision which the Appeals Council reversed and remanded for further consideration.

On January 7, 2014, ALJ Bernard Porter conducted a further administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On June 17, 2014, the ALJ entered a second unfavorable decision. The Appeals Council denied review of the ALJ's decision on December 7, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with

limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to conduct a proper credibility analysis; (2) reaching an improper and unsupported RFC; and (3) improperly rejecting the opinions of Claimant's treating physician, counselor, and consultative examiner.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of gastroesophageal reflux disease, degenerative joint disease of the left hip, migraine headaches, lumbar disc disease with radiculopathy, degenerative joint disease of the knee, syncope with pacemaker placement, angina, irritable bowel syndrome, bipolar disorder, anxiety disorder, posttraumatic stress disorder, borderline intellectual disorder, personality disorder, and major depression. (Tr. 43). He also found Claimant retained the RFC to perform sedentary work, concluding she could lift, carry, push, and pull a maximum of 10 pounds occasionally and five pounds frequently, she could stand/walk for two hours in an eight hour workday, and sit for six hours in an eight hour workday. Claimant, however, required a sit/stand option to allow for a change of position at least every 30 minutes and was limited to occasional

5

use of foot controls. She could occasionally climb ramps and stairs but was precluded from climbing ladders or scaffolds. Claimant could frequently balance and stoop, occasionally kneel, and frequently crouch but could never perform any crawling. Claimant should not work around unprotected heights, around moving mechanical parts, or in environments with temperature extremes. Claimant was also limited to simple tasks, simple work-related decisions, and hearing and understanding simple oral instructions with occasional contact with supervisors and co-workers but no interaction with the general public, with time off task accommodated by normal breaks. (Tr. 48).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of touch up screener, document preparer, and table worker, all of which the ALJ determined existed in sufficient numbers in the state and national economies. (Tr. 59). As a result, the ALJ determined Claimant was not disabled since September 10, 2010. Id.

Claimant contends that the ALJ failed to properly assess her credibility. Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been

6

known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

## Evaluation of the Opinion Evidence

Claimant contends the ALJ failed to properly consider the opinion evidence in the case. Dr. Rick Robbins provided treatment to Claimant. He completed a medical source statement dated September 21, 2012 wherein he found Claimant could lift/carry less than ten pounds occasionally and frequently. She could stand/walk and sit for less than two hours in an eight hour workday. (Tr. 736). Dr. Robbins determined Claimant was limited in her upper extremities due to wrist pain. She should never climb, balance, stoop, kneel, crouch, crawl, bend, squat or reach overhead due to pain with range of motion in her wrist, knees, and hips. (Tr. 737). In manipulation, Dr. Robbins found Claimant was limited in reaching in all directions, handling, fingering, and feeling due to constant pain in her wrist. She should avoid exposure to extreme cold, wetness, humidity, noise, vibration, fumes, dust, and hazards. (Tr. 738). Claimant would require four or more unscheduled breaks in an eight hour day in Dr. Robbins' estimation.

7

She would likely be absent from work more than four days per month. She would not be required to elevate her legs. His assessment included the time period from June 14, 2010 to present. (Tr. 739).

The ALJ found Dr. Robbins appeared to rely "quite heavily" upon Claimant's subjective reports finding his diagnosis of a fractured coccyx in November of 2010 was not borne out by the x-rays from Claimant's emergency room visit. When she complained of hip pain, an x-ray of her left hip revealed no abnormalities. (Tr. 50). He also found Dr. Robbins' treatment was conservative and inconsistent with his opinion. He recognized that Claimant did have positive straight leg raising at 70 degrees on the right and 90 degrees on the left and was tender over the right flank in November of 2013 but she was neurologically intact. The ALJ determined Claimant's activities of daily living, including caring for a toddler, was inconsistent with Dr. Robbins' functional limitations. He gave Dr. Robbins' opinion "little weight." (Tr. 57).

"[T]he fact that a medical source relies on a plaintiff's subjective reports of her symptoms provides no basis for discrediting a medical opinion." Gonzales v. Colvin, 69 F. Supp. 3d 1163, 1170-71 (D. Colo. 2014) citing Nieto v. Heckler, 750 F.2d 59, 60-61 (10th Cir. 1984); Gutierrez v. Astrue, 2008 WL 5246300,

at 4 (D.Colo. Dec. 15, 2008). "The ALJ's own disbelief of plaintiff's subjective complaints provides no basis on which to discredit an otherwise valid medical source opinion, since the ALJ may not substitute his lay opinion on the effect of medical findings for that of a medical professional." Id. citing Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

Additionally, the medical records from Claimant's emergency room visit indicate the belief of staff that Claimant had fractured her coccyx. (Tr. 985). Claimant was directed to follow up with Dr. Robbins. Id. There is no indication that Dr. Robbins' functional analysis included restrictions based upon a fractured coccyx.

The ALJ appears to rely heavily upon Claimant's care for her children as a basis for rejecting Dr. Robbins' findings. "[T]he fact that a person has to care for children does not necessarily mean that he or she is not in pain while doing so." Angster v. Astrue, 703 F.Supp.2d 1219, 1226 (D. Colo. 2010). Since the ALJ is

9

reassessing Claimant's credibility as to pain, he should also re-evaluate the functional limitations found by Dr. Robbins who based a good measure of his restrictions upon Claimant's level of pain.

Dr. Ronald Kantola also provided a statement on November 15, 2013 which provided that he had installed a pacemaker in Claimant based upon a diagnosis of syncope and AV block. (Tr. 935-36). He determined Claimant should not arc weld. Id. Claimant had previously reported black outs and fainting spells resulting in the pacemaker. (Tr. 613, 647, 719, 741, 759). The record does not indicate that the ALJ rejected Dr. Kantola's opinion as Claimant appears to argue in her briefing.

On January 6, 2012, Dr. Denise LaGrand completed a medical source statement on Claimant's mental status. She concluded Claimant was markedly limited in the areas of the ability to make judgments on simple work-related decisions, understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgements on complex work-related decisions. (Tr. 715). She found Claimant had an IQ of 72. Id. She found Claimant had problems with social avoidance. (Tr. 716). The ALJ gave "little weight" to Dr. LaGrand's opinion due to the level of Claimant's daily activities, including taking care of her children, manages her finances, prepares meals, drives, shops,

10

performs household chores, attends church and visits with relatives. She uses a computer and Facebook which, in the ALJ's view, belied marked limitations in attention and concentration. She participated in group sessions and karate. (Tr. 55-56).

The ALJ must evaluate every medical opinion in the record, and he will consider several factors in deciding the weight that should be given to any medical opinion. Salazar v. Barnhart, 468 F.3d 615, 625-626 (10th Cir. 2006)(citing 20 C.F.R. § 416.927(d)). In evaluating medical opinions, the ALJ must accord each opinion the proper weight on the basis of: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. Id. at 626. *See also* Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must give good reasons for the weight assigned to a medical opinion and set forth specific, legitimate reasons for rejecting an opinion of an acceptable treating source. Watkins, 350 F.3d at 1300-1301.

Dr. LaGrand's findings were based upon her examination and testing. With regard to mental status, the ALJ appears to be

substituting his medical judgment for Dr. LaGrand's in assessing that spending time on Facebook indicates Claimant does not have a marked limitation in concentration. On remand, the ALJ shall reassess Dr. LaGrand's opinion and provide legitimate bases for the weight he assigned to the opinion. The ALJ should re-evaluate his RFC findings to coincide with any changes in the evaluation of Claimant's credibility and with the professional opinions.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE